IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY MARSHALL,                          :

      Plaintiff,                              :

v.                                         :        Civil Action No. GLR-15-2265

DR. COLIN OTTEY, MD, et al.,               :

      Defendants.                             :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Colin Ottey's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 8) and Defendant Assistant Warden Richard S. Roderick's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 13). Also pending is Plaintiff Gregory Marshall's Motion for Finding of Incompetency and Appointment of Counsel. (ECF No. 10). The Motions are ripe for disposition. Having considered the Motions and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons stated below, the Court will grant Defendants' Motions and deny Marshall's Motion.[1]

## I.  BACKGROUND

Marshall, a Maryland Division of Correction ("DOC") prisoner housed at North Branch Correctional Institution ("NBCI"), alleges his medical need for properly fitting corrective contact lenses has been ignored, leading to visual impairment that has resulted in endangerment from his cell mate. Marshall alleges Defendant Michael Summerfield, MD, an ophthalmologist under contract

---

[1] Also pending is Roderick's Motion to Deny Plaintiff from Proceeding in Forma Pauperis (ECF No. 12). Roderick requests that this Court revoke its previous determination that Marshall proceed in forma pauperis, and asks that Marshall be directed to immediately pay the full filing fee or face dismissal of his Complaint. Roderick contends that the record does not demonstrate Marshall's entitlement to a single cell nor a denial of medical attention. Such findings could not be contemplated at the time the Complaint was filed. Accordingly, the Court will deny Roderick's Motion to Deny Plaintiff from Proceeding in Forma Pauperis.

with DOC to provide eye care to prisoners, and prison physician Ottey have ignored his complaint concerning ill-fitting contact lenses.  On October 2, 2014, Marshall was seen at the University of Maryland Medical System ("UMMS") to be fitted for contact lenses.  (ECF No. 1-1).  The fitting physician noted that Marshall's vision was 20/60 in the right eye and 20/70 while wearing the contacts.  (Id.).  While there, the physician recommended him for single cell housing due to poor vision when without his contacts.  (Id.).

On November 13, 2014, Marshall had an eye examination for his tinted contact.  (ECF 8-1).  On January 21, 2015, Marshall was seen at UMMS for assessment as to suitability for rigid contact lenses.  (Id.).  He stated one of his contact lenses had been removed a month earlier by a prison doctor.  At his January 24, 2015 chronic care visit, Marshall stated his contacts had stopped working.  (Id.).  The physician noted the ophthalmologist's request to see Marshall in two months and filed a consultation request for the visit.  (Id.).

On February 20, 2015, Marshall complained of loss of vision.  (Id.).  On February 24, 2015, Marshall complained to a nurse practitioner that he needed contact lenses.  (Id.).  Two days later, on February 26, 2015, the consultation request for Marshall to return to UMMS ophthalmology was approved.  (Id.).  On March 6, 2015, Marshall complained to the nurse practitioner that UMMS had confiscated his left contact lens and that Ottey had confiscated the right lens.  (Id.).  The nurse practitioner noted that Marshall had lost his lenses.  (Id.).  On March 16, 2015, Marshall asked the nurse practitioner to provide him a cane due to his poor vision.  (Id.).  He denied losing his lenses, again stating a UMMS physician took one lens and Ottey took the other.  (Id.).

On April 30, 2015, a consult request was submitted to ophthalmology to evaluate Marshall's suitability for rigid gas permeable ("RGP") contact lenses.  (Id.).  On May 12, 2015, medications for the lenses were ordered.  (Id.).  On May 13, 2015, Marshall was seen by Summerfield.  (Id.).  Marshall lost the right contact lens.  (Id.).  Marshall reported difficulty in obtaining lens cleaner, and requested a single cell due to his vision, which was 20/100 without contact lenses.  (Id.).

Summerfield deferred to custody on the issue of Marshall's housing.  (Id.).  The next day, on May 14, 2015, Summerfield submitted a non-formulary request for lens cleaner.  (Id.).

On June 10, 2015, Marshall received an RGP lens, which Summerfield noted fit well for the right eye.  (Id.).  Marshall did not report improved visual acuity and Summerfield recommended having optometry check the prescription.  (Id.).  Marshall again asked for a single cell.  (Id.).  On August 30, 2015, a consultation was submitted for him to be refitted with RGP contact lenses.  (Id.).  On September 24, 2015, six weeks after he filed this lawsuit, Marshall complained the right lens was not working correctly, and was referred to optometry.  (Id.).

On August 3, 2015, Marshall filed a Complaint pursuant to 42 U.S.C. § 1983 (2012), claiming, inter alia, civil rights violations under the Eighth Amendment and denial of equal protection based on racial discrimination.[2]  (ECF No. 1).  On November 4, 2015, Ottey filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  (ECF No. 8).  On November 9, 2015, Marshall filed a Motion requesting the Court to find him incompetent and appoint him counsel in this matter.  (ECF No. 10).  On December 2, 2015, Roderick filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[3]  (ECF No. 13).  On December 18, 2015, Marshall filed an Opposition to the Motions.  (ECF No. 15).

---

[2] On September 2, 2015, the Court denied Marshall's request for a preliminary injunction; dismissed Defendant Executive Director Christine A. Farrelly from this action; dismissed Marshall's claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq. (2012), and allegations of conspiracy regarding the treatment of his liver disease; and dismissed Marshall's claim of verbal abuse by Roderick.  (ECF No. 3).  Noting that Marshall is barred generally from civil filings under the "three strikes" provisions of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g) (2012), the Court permitted the case to proceed with regard to Marshall's allegations that his problem with ill-fitting contact lenses continues to be ignored and that he is housed with a dangerous cellmate and suffers such physical impairment as to require single-cell housing.  (Id.).

[3] Service of process was not obtained for Dr. Summerfield.  For reasons noted herein, had Dr. Summerfield been served with summons, he nonetheless would be entitled to summary judgment. The claim against him will be dismissed without requiring a response.

## II.     DISCUSSION

### A.  Motion for Finding of Incompetency and Appointment of Counsel

Marshall claims he is mentally incompetent and requires appointment of counsel.  (ECF No. 10).  Federal Rule of Civil Procedure 17(c)(2) states:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

The United States Court of Appeals for the Fourth Circuit has observed that "[t]he practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one," and "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability." Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir. 1986).  Rule 17(c)(2) recognizes the existence of some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs that goes beyond "mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." Id.  The Rule allows this Court to appoint a guardian ad litem, but it does not compel it to do so.  Rather, it grants the Court considerable discretion to issue an "appropriate order" to protect the interest of an unrepresented, incompetent litigant.  See Seibels, Bruce & Co. v. Nicke, 168 F.R.D. 542, 543 (M.D.N.C. 1996).

While there is no dispute that Marshall suffers mental illness, he is not legally adjudicated "incompetent."  The Court will, therefore, deny Marshall's request for appointment of counsel.

### B.  Motions to Dismiss or for Summary Judgment

#### 1.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  "When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).  Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247–48.

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248; see JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor

without weighing the evidence or assessing the witness' credibility." <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." <u>Bouchat</u>, 346 F.3d at 526 (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778–79 (4th Cir. 1993).

Here, because the Court will consider matters outside of the pleading, the Motions to Dismiss will be construed as ones for summary judgment.[4]

**2. Analysis**

**a. Failure to Protect**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Marshall must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. <u>See</u> <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987) (citing <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979)).

> Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

<u>Farmer v. Brennan</u>, 511 U.S. 825, 833–34 (1994) (citations omitted). For a prison official to be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, "the official [must know] of and disregard[] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837; <u>see also</u> <u>Rich v. Bruce</u>, 129 F.3d 336,

---

[4] "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." <u>Carter v. Balt. Cty.</u>, 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

338 (4th Cir. 1997).  A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established.  <u>Farmer</u>, 511 U.S. at 834, 837.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk to either injury."  <u>Danser v. Stansberry</u>, 772 F.3d 340, 346–47 (4th Cir. 2014) (quoting <u>Farmer</u>, 511 U.S. at 834).  The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose <u>anyone</u> unwillingly to such a risk."  <u>Helling v. McKinney</u>, 509 U.S. 25, 36 (1993).  Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety."  <u>Farmer</u>, 511 U.S. at 834 (citations omitted).  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  <u>Id.</u> at 837.  Where prison officials responded reasonably to a risk, they may be found free of liability.  <u>Id.</u> at 844.

Marshall alleges that on July 20, 2015, he was assaulted by his cellmate and was unable to defend himself due to his vision.  Marshall alleges Roderick refused to investigate Marshall's complaint concerning the contact lenses and denied Marshall a single cell as recommended by a UMMS physician.  Prisoners may be placed in a single cell for mental health, medical, or security reasons (Singy Decl. ¶ 3, ECF No. 13-3), and may be placed on disciplinary segregation in double cells unless security considerations based on the prisoner's behavior dictate single celling.  (<u>Id.</u> ¶ 4).  Prisoners who require separation from the general population because they fear for their lives or safety may be placed on Protective Custody ("PC") status.  (<u>Id.</u> ¶ 6).  Because NBCI does not have PC cells, those requiring separate housing are assigned to administrative segregation.  (<u>Id.</u>).  Unless security concerns dictate otherwise, those assigned to administrative segregation are housed in a

double cell with another prisoner if the two are not known to be a danger or threat to each other.  (Id. ¶ 7).  Marshall does not meet the criteria for administrative segregation or a single cell.  (Id. ¶ 9).

There is no evidence that Defendants had actual knowledge of any risk of harm to Marshall.  Further, "not every injury suffered by a prisoner at the hands of another 'translates into constitutional liability for prison officials responsible for the victims safety.'"  Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 834).  Marshall cannot demonstrate an attack by his cellmate would establish constitutional liability for the prison officials.  In fact, there is no evidence in the record that Marshall reported an assault by his cellmate in July 2015.  (Singy Decl. ¶¶ 11–12).  Marshall's claims of endangerment have been investigated and no verifiable evidence exists to support his claims.  (Id. ¶ 8).  The Court, therefore, concludes Defendants are entitled to judgment as a matter of law as to the claim for failure to protect.

### b.  Denial of Medical Care

The Eighth Amendment also prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citing Furman v. Georgia, 408 U.S. 238, 392–93 (1972)).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  See Farmer, 511 U.S. at 837.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  Id. at 839–40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  Rich, 129 F.3d at 340 n.2.  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to

proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2000).

A prisoner's disagreement with a prescribed course of treatment does not establish deliberate indifference and, therefore, does not state a claim. See Peterson v. Davis, 551 F.Supp. 137, 146 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Likewise, claims of medical negligence or disputed questions of medical judgment are not cognizable because they do not involve deliberate indifference. See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (stating questions of medical judgment are not subject to judicial review). Indeed, the "mere failure to treat all medical problems to a prisoner's satisfaction . . . is insufficient to support a claim under § 1983." Peterson, 551 F.Supp. at 146; accord Fore v. Goodwin, 407 F.Supp. 1145, 1146 (citing Cole v. Williams, 526 F.2d 588 (4th Cir. 1975)) ("A prisoner cannot be ultimate judge of what medical treatment is necessary or proper . . . .").

Marshall does not dispute the medical records submitted by Ottey which establish he was seen numerous times for a multitude of medical issues and received referrals and examinations regarding his contact lenses and vision problems.[5] Marshall may be not be satisfied with the fit of his lenses, but medical personnel have repeatedly addressed those concerns, as well as his concerns about further loss of visual acuity. Marshall is not constitutionally entitled to dictate the care provided by medical staff. "The right to treatment is, of course, limited to that which may be

---

[5] Review of those records reveals, however, that Marshall did not complain of headache pain. Marshall also alleges that Ottey has "conspired" to keep him from receiving treatment for a liver condition, but his medical records reflect that he was receiving medication for pain due to his prostate problems.

provided upon a reasonable cost and time basis and the essential test is one of medical <u>necessity</u> and not simply that which may be considered merely <u>desirable</u>." <u>Bowring v. Godwin</u>, 551 F.2d 44, 47–48 (4th Cir. 1977) (emphasis added).   The evidence does not establish that Defendants were deliberately indifference to Marshall's medical needs.   In fact, Defendants have repeatedly and diligently addressed his medical needs.

Similarly, Marshall is not entitled to dictate his housing status.   To receive single cell status for medical reasons at NBCI, a doctor from the NBCI medical department must determine the prisoner's condition warrants single cell status, and must complete the single cell status paperwork. (Singy Decl. ¶ 5).   Prison medical providers found that Marshall does not meet the criteria for administrative segregation or a single cell.   (<u>Id.</u> ¶ 9).   The Court, therefore, finds Defendants are entitled to judgment as a matter of law regarding Marshall's denial of medical care claim.

### III.     CONCLUSION

For the forgoing reasons, the Court will GRANT Defendants' Motions for Summary Judgment (ECF Nos. 8, 13).   The Court will DENY Roderick's Motion to Deny Marshall from proceeding in forma pauperis[6] (ECF No. 12) and Marshall's Motion for Finding of Incompetency and Appointment of Counsel (ECF No. 10).   A separate Order follows.

Entered this 29th day of April, 2016

/s/

_____
George L. Russell, III
United States District Judge

---

[6] <u>See</u> <u>supra</u> note 1.